February 15, 1977

## 77-7 MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

### Power of a State Legislature to Rescind its Ratification of a Constitutional Amendment

In connection with the consideration by the States of the Equal Rights Amendment, the question arises whether a State has the power to rescind its prior ratification of a constitutional amendment. The same question was presented in 1868 in connection with the adoption of the Fourteenth Amendment. Congress decided at that time that the States lacked that power. The historical development, however, was such that the Amendment would have been adopted even without that legislative decision.

In 1868, the year the Fourteenth Amendment was pending for ratification by the States, there were 37 States. Twenty-eight were required to constitute the majority of three-quarters required by Article V of the Constitution. By July 1868, 29 of the States had ratified the Amendment. In two of them, however, Ohio and New Jersey, the legislatures had passed resolutions withdrawing their consent to the Amendment.

On July 20, 1868, Secretary of State Seward issued a proclamation to the effect that the Amendment had been ratified by the required number of States, and had become valid as a part of the Constitution of the United States on the condition that there be a determination that

> "the resolutions of the legislatures of Ohio and New Jersey ratifying the aforesaid amendment are to be deemed as remaining of full force and effect, notwithstanding the subsequent resolutions of the legislatures of those States, which purport to withdraw the consent of said States from such ratification." 15 Stat. 706–707.

13

On the following day, July 21, 1868, Congress adopted a concurrent resolution [1] to the effect that the Fourteenth Amendment had been adopted by the legislatures of three-quarters of the States and that the Amendment was "hereby declared to be a part of the Constitution of the United States." Cong. Globe, 40th Cong., 2d Sess. 4266, 4295–4296 (1868). The resolution enumerates 29 States, including New Jersey and Ohio, as having ratified the Amendment.

The same day, Georgia ratified the Amendment. 15 Stat. 708. Unofficial news of that action reached the House of Representatives during its deliberations on the concurrent resolution. The House, however, did not include Georgia among the ratifying States.

On July 28, 1868, Secretary Seward, in compliance with the concurrent resolution, issued a proclamation declaring the Amendment to have been adopted. He listed Georgia, New Jersey, and Ohio among the 30 ratifying States. 15 Stat. 708–711.

As the result of the ratification of the Amendment by Georgia, it had been approved by 28, *i.e.,* the requisite number of States, even if New Jersey and Ohio were disregarded. To that extent the issue as to whether a State may withdraw its ratification became moot. The question, however, was still alive when Congress made its determination. There is substantial authority to the effect the power of Congress to control the submission of constitutional amendments to the States and to determine whether they have been validly adopted is exclusive. *Coleman* v. *Miller,* 307 U.S. 433, 449–450 (opinion of the Court), 457–458 (concurring opinion) (1939), *approved in, Baker* v. *Carr,* 369 U.S. 186, 214 (1962).

If the issue should arise in connection with the Equal Rights Amendment, it seems virtually certain that the question will be put to Congress again. The functions of the Secretary of State with respect to constitutional amendments have been statutorily conferred on the Administrator of General Services. 1 U.S.C. §§ 106b, 112. However, the very fact that this function is vested in the GSA Administrator is indicative of its ministerial nature. The Constitution of the United States, Analysis and Interpretation, S. Doc. No. 82, 92d Cong., 2d Sess. 860 (1973), would either have to follow the precedent established by Congress in 1868, *i.e.,* that a State cannot withdraw its ratification, or submit the issue to Congress.

Various commentators have agreed with the 1868 congressional ruling. Cooley, General Principles of Constitutional Law 257 (4th ed.) and Watson, The Constitution of the United States 1317–1318 (1st ed. 1910), support the ruling on the basis of precedents in the fields of municipal bond elections or votes on special assessments where it has

---

[1] The submission of a constitutional amendment to the States need not be presented to the President. *See, Hollingsworth* v. *Virginia,* 3 Dall. 378 (1798). It therefore would appear that a congressional determination as to whether an amendment has been adopted by the requisite number of States can be passed as a concurrent resolution that is not presented to the President.

been held that an affirmative vote is final and conclusive. Jameson, A Treatise on Constitutional Conventions 632 (4th ed. 1972), suggests an element of promissory estoppal, namely, that when a State ratifies an amendment, it induces like action by other States. It also suggests on the basis of certain historical precedents that ratifications of a constitutional nature are absolute and unconditional. Jameson, at 629–630. *See also* Watson, *supra,* at 1315–1317.

While Cooley's General Principles of Constitutional Law, *supra,* supports the action taken by Congress, Judge Cooley's note on the Fourteenth Amendment in Story, II Commentaries on the Constitution of the United States, 677, 680 n. 1 (5th ed. 1891), questions its correctness and doubts whether a State should be held to its affirmative vote on an amendment to the Constitution if there should be total change of circumstances long after that vote was taken. The answer to that argument seems to be that the Equal Rights Amendment must be approved within 7 years after its submission to the States. The commitment of a State to its affirmative vote or an amendment during that period does not appear to involve any undue hardship.

JOHN M. HARMON
*Acting Assistant Attorney General*
*Office of Legal Counsel*
